This is case number 4-11-0958. In re the interest of Marcus J. See we have attorney Martin Ryan for the appellant and attorney Amy Sipes Johnson for the defense. My primary argument in this case concerning Marcus is based on a confluence of statutes in the Juvenile Court Act. And I think at the outset I want to make an important distinction between this case, a juvenile case, and an ordinary adult probation revocation case. In an adult case, prison is an option that was available at the original sentencing is available at a revocation. In juvenile, while that platform is also there, there is an additional obstacle, there is an additional hoop that is required for a juvenile to get sent to prison, which is section 750, which is not available to unless there is basically one of two ways of doing it. The first is if the parent has a set of facts where the parents can't control the child, parents are guardians, and placement under section 740, which is a secure residential placement, is not in the child's best interest and also it's not in the public's best interest. The other way of committing a child to prison in juvenile is if prison is not necessary to protect, or prison is not, prison is necessary to protect the public from the child's criminal activity. So every time a child is sentenced, if prison is being weighed, courts have to go through section 750. And recent developments in Illinois law have made it clear that for juveniles that's supposed to be an option of last resort, albeit unfortunately for Marcus, the particular legislative change that made that official statewide did not take effect until three months after Marcus was sentenced. However, there was a pilot program in place, I believe, in other counties. But there are also other statutes that are involved that also differentiate this from an adult case. Section 5-7101B essentially spells out that minors cannot be sentenced to IPJJ or jail for conduct for which adults cannot be locked up. And a similar provision is section 1-4.1, also the Juvenile Court Act. But counsel, that's not what happened in this case. He wasn't sentenced for running away or whatever the violation of his probation was. Wasn't he sentenced on the original offense, which was delivery of drugs at school? The original offense was the start of the case. However, there was an intervening judgment in this case after the court, the court initially sentenced the minor to prison as a scared straight tactic, I believe. The minor behaved well in prison and the judge gave him probation. At that point, to essentially say that the minor gets probation at that point is a judgment that the underlying offense did not involve such conduct that was required to protect the community from the child's criminal activity or that it was in the child's best interest to be going to prison. Because at this point, the court has already decided to let him out, knowing that the kid brought five grams of pot to his middle school to try and sell it to another middle school student to buy a pair of jeans. Well, counsel, do you dispute that the minor was being sentenced for the possession of the drugs at school after the trial? Perhaps this is a difference of semantics. That was clearly the underlying offense and that's the name, that is the crime of adjudication underlying this entire case. But there was a judgment of probation after that and it's the running away that got him sent to prison and I don't think there's any doubt about that. Well, okay. It seems you're arguing two things and in your brief it clearly is a separate argument. One, that the trial court erred as a matter of law for entering the judgment that it did after the probation violation. The second being that it was an abuse of discretion. But centering on Justice Pope's question of you, as to the error as a matter of law, what you're arguing, that the trial court could not sentence the respondent to a D.J.J. sentence, is there any case law that would provide support for that? Because clearly trial courts are presented with this situation many, many times. This is a very common theme where there is a crime committed in the adult realm or in the juvenile realm where a sentence to prison is possible. The court sentences instead the individual to probation. There is a violation of probation. It could be that the individual didn't obtain anger management counseling, didn't pay fines. It could be any number of things that individually might not even constitute a crime, let alone a crime for which a sentence to prison would be possible. And yet that individual can be sent to prison because they violated their probation and the underlying offense was one subject to a term of imprisonment. Do you have any case law that says otherwise? I believe this is, for published opinions, I believe this is a case of first impression or at least an argument of first impression, at least in terms of published case law. I'm not aware of a case on point either way, Your Honor. Doesn't the statute actually contradict your argument, though? If you look at 5-724, it says if the court finds the minor has violated a condition of probation, it may revoke probation and impose any other sentence that was available at the time of the initial sentence. It does not, Your Honor, because I don't read that as nullifying 750, because you still cannot send a minor to prison unless you've satisfied 750. And I don't see how, if it's not in the minor's best interest that he go to prison and there's no threat to the community based on the underlying judgment of probation, where the court knows about the underlying crime of some marijuana to middle school. And there's a judgment at that point that there's not a danger to the community, that it isn't in the child's best interest to go to prison. How running away afterwards as the sole basis for revoking this kid's probation is grounds to send him to prison. And that's all there is. That's what got him sent to prison. I understand that the underlying offense was bringing marijuana to middle school. But you can't, it's not enough just to say this one statute generally allows courts that remedy. You also have to comply with 750, which doesn't allow prison unless those conditions are met. And I don't see how running away in and of itself is a threat to the community. It's not criminal activity. It wouldn't be a crime if committed by an adult. So if you were to rank the strength of your argument here, the first being trial court erred as a matter of law and that didn't have the power to sentence the respondent to D.J.J. versus it was an abuse of discretion. Is the abuse of discretion argument that you would say is your strongest argument? You know, I don't know. I suppose in real life it might be. But I've never been an accurate predictor of what flies and what doesn't. I actually, I think it's fairly, here, when you get to the idea, again, this is, I'm limiting this to purely status offenses. If there had been some evidence that the child had committed a theft or some criminal conduct, that would be off the table because then you have new criminal activity that is not part of the underlying judgment of probation. That is additional evidence of a threat to the public. Mr. Ryan, what you're saying though is this minor was out of the control of his mother. Who knows what kind of trouble he could get in. Do we wait until he commits another offense? Is that in his interest? Your Honor, with all due respect, you actually have to. We don't, in this society, we don't lock people up in advance on the probability that they're going to commit a crime. But he's already committed a crime that he's been sentenced for. And didn't the court say, first of all, that the mother was unable to control him so placement at home was not appropriate? Yes. Didn't the court also make a finding that it was not in the best interest of the public to place him under 740, 5-740? The court made those findings. I'm saying those findings are wrong. Because again, where is the threat to the public? How is it becoming in the best interest to send him to prison if he's running away? And there are all these other options. There's a Section 740, other than granted, sending this child back home to do more probation with a mother who can't control him was not an appropriate disposition. Other than sending him to prison and other than sending him back to mom on ineffective probation, there was a 740 placement in a secure residential facility. There's DCFS guardianship if he's under 15, and he was at this time, or if he was abused and neglected, under 710 A sub 4. There's a period of detention. Is DCFS taking 15 year olds who violated the law? That is one of the appropriate dispositions under Section 710. But as a matter of policy, taking those individuals? I don't know what the statute says. At least when I was on the trial court, they wouldn't take anybody over the age of 13 who committed an offense. The statute says under 15. It's 5-710 A sub 4. And he was 14 at the time. Was he 14 at the time of the probation revocation? Yes. I believe he was 14. This all happened in the same year. The offense, the... Well, it could have happened in the same year, and he still could have charged 15. Oh, yes, yes, yes. He was 14 the entire time. Another option is detention for the same period as an adult, with or without probation or conditional discharge, under Section 710 A8. There's electronic home detention for under 810. I mean, all of those things are available, but are you saying that the court had no option to incarcerate this minor? You're saying that was wrong as a matter of law? For running away, and not any criminal conduct. But what you're arguing is that the court sentenced him for running away, and not on the original charge. Well, I'm arguing that it is the running away that got him sent to prison, and I don't think there's any dispute about that. Well, maybe there will be, Ms. Johnson here, because in addition to the running away, it's indicated that there were two contacts for criminal activity, theft under $300, and criminal damage to property. So, was there additional conduct besides the running away that supported the probation revocation? No. There are police contacts listed in the record, one for theft, one for However, those are not in the petition to revoke. They were not put in at the sentencing slash dispositional hearing. All we know is a date, and a contact. We don't know that a crime occurred, and we don't know whether Marcus was a perpetrator or a bystander with some other kid who shoplifted, and he was along for the ride. We have no idea. And no charges were brought, and it was not included in the petition. The court in a juvenile case is allowed to consider contacts with the police, aren't they? Yes. Nathan, well, there's abundant case law that says it's unreliable. I don't, and honestly, I don't see how it becomes reliable in a juvenile case. This court has said you can consider it. But, you know, given that argument, as I said in my reply read, even assuming that the contacts are in the universe of information available to the court, how probative is that? We have a police contact with no further information that says theft. And I don't think that police contacts with no other information as to whether a crime occurred at all or whether it was, and whether it was Marcus who was the perpetrator rather than any other role or bystander is a basis for sending him to prison, especially with how bad prison is for juveniles, which the Supreme Court of the United States has noted. And I understand that, you know, again, it's the, it's not, it's the 740, or 740, I'm sorry, 720, excuse me, I misspoke, that has the general options for any available sentence where you start out. But for a minor, you still have to go through 750. And again, how is it, you know, given how bad and undisputedly bad prison is for minors, how is it in a minor's best interest who is running away to be sent to prison? Where is the threat to the community from criminal activity when there isn't any criminal activity? Unless we're going to assume that a police report amounts to a reason to send a child to prison. I'm sorry, not even a police report. It's not even that detailed. Well, if by extension of this argument, really trial courts cannot, if we were to find that that's an abuse of discretion in this circumstance, the individual running away, the trial court could not follow through with an any probation violation that was not itself subject to a prison sentence. If that individual was habitually late, curfew violations, failures to obtain substance abuse treatment, anything that was a violation but was not a criminal act subject to a DJJ sentence, trial court would have no obligation to bring offense to the DJJ. Is that what you're saying? If you agree in the first argument, yes. That is what I'm saying. I'm saying that you try over and over again with a minor. Again, as the U.S. Supreme Court has noted, children are constitutionally different than adults. That would be directly contrary to what Justice Pope read to you in terms of what the statute says. But that's not the only statute. There is a statute in the adult context that says you get mandatory consecutive sentences if you commit certain sex offenses. You could have five, six counts. There's another statute that says you can only stack consecutive sentences so high. It's not to read just one statute. You still have to satisfy 750. And when you have a curfew violation, a kid buys cigarettes when they're only 16, underage drinking at 18 or 19, when you have, well, maybe 17. Those aren't, and again, given that prison is becoming more and more had this case come up three months later, there would have to have been a showing that it was like a last resort. There would have to have been like a last resort showing it's the last available option to satisfy the minor. With minors, you try and try again. And again, with running away, of course, eventually you can give the kid detention. You can put the kid in a secure residential facility. You can make the kid a DCFS guard. You can take his license away. There's all these options for dealing with the kid. And of course, eventually they age out because by the time they're 17 or 18, they can live on their own anyway and they're emancipated. Of course, he didn't have a license. No, no, that's a general option. Obviously, it's not available. I assume he didn't. He's 14. I can't imagine he would have. I think you're right. On the alternative argument, you know, obviously, you know, it's fairly clear that the kid did not have the greatest life, as pretty much almost every juvenile comes through my agency and I'm sure through this court and delinquency proceedings didn't. And I did set out the facts, you know, in my brief. You know, essentially, he was born with crack in his system. He has ADHD. He had, I'm not sure of the circumstances of how he came to be adopted by a family that was substantially older than him. Perhaps it was foster care. But he was a 14-year-old boy with siblings in their 50s and parents in their 70s. And then his father, his adoptive father died. His sister died. And actually, I don't know if this is a coincidence or not. I believe his sister died in March of 2009, which was before this case arose. And that is when the contacts started hitting. And I don't know if that's a coincidence or not. And then another brother died just before he was resentenced. And the record also shows at the revocation hearing that one of the reasons that Marcus was running away was to avoid basically being in fist with his brother, whom his 71-year-old mother would call, apparently, to be the enforcer. There were no fights while he was on probation. There's no evidence of any fights or violence while he was in IDJJ or detention or while he was loose on probation. And so even if there is some residual discretion to say that somehow prison is the right remedy to solve a kid who's running away with no criminal activity as shown as a result of that, I would say that in this case it was an abuse of discretion. Counsel, how long was he out from the Department of Juvenile Justice before problems started happening? I think about a month, give or take a week. I'm not saying this child did not need more intervention. I'm saying prison isn't the answer for kids who run away. Are there no further questions? I would ask this Court vacate Marcus' presentation. Thank you, Mr. Ryan. Ms. Johnson? Good morning. May it please the Court. I will start off where Mr. Ryan just stopped. I agree running away is not treated by sending someone to prison, but that's a very isolated view of what happened here. As your questions have indicated, you're fully aware. He was being sentenced for possession of 5.6 grams of cannabis on a middle school ground. He was not being sentenced for running away. And the statute plainly provides that when a minor violates probation, the Court is allowed to sentence the minor to any sentencing option that was available at the original time. Originally he was sentenced to Department of Juvenile Justice. Clearly that means it was an option available at the original sentencing hearing. It was because he did well that the Court provided him an opportunity to show that he could succeed in a community-based sentence and allowed him that opportunity, but with conditions. They were not difficult conditions, they were very standard conditions. In response to your question, Justice Holder-White, it was actually two weeks before the conduct started to go downhill. It was a month before the hearing was set. The hearing actually occurred later than it was originally scheduled because the minor failed to appear at the original hearing to review the probation after his release from commitment. Within those two weeks, which caused the State to file the petition to revoke, and prior to the approximately four weeks later when the hearing was held, it was not simply running away. It was running away multiple times. It was failing to appear for three probation visits, and I believe they were set up once a week. So if in four weeks you should have had four visits, he missed three of them. It was failing to follow curfew, it was failing to take prescribed medications, he had made no efforts toward the community service hours that he had been ordered to do. It was not just running away. And that, at that point, even if those were not criminal offenses, those get lumped back in with the original offense when he came before the Court and the probation was revoked and he was subject to resentencing. I agree that 750 puts some limitations on when a court's finding of commitment is appropriate, but it does not remove the option. At the time that Marcus was found adjudicated delinquent for the possession with intent to deliver, his sentencing options were set. That sentencing option included the commitment to the Department of Juvenile Justice. His subsequent behavior, when he was given this opportunity to prove he could do better, and whether those conducts while on probation are criminal or non-criminal, truthfully are irrelevant. The sentencing options were set at the time he was adjudicated delinquent for the offense of possession with intent to deliver. So that addresses the argument as to whether or not it was error as a matter of law. It gets then to the abuse of discretion part of the argument. Yes. I hear that Mr. Ryan was making. Would you agree that there is a lower limit, that there is a limit where it becomes an abuse of discretion? Just hypothetically, in this situation, take everything as how it actually played out here up to when he is released from DJJ, and let's say there is a single curfew violation and the state seeks to revoke his probation based on that one item, and if the trial court had and then had sentenced him to DJJ, would that be an abuse of discretion? Those are different facts in here, and I would be surprised to find any trial judge that based on a single occurrence of running away with it. But that's not what I'm asking you, I'm asking you if that occurred, would that be an abuse of discretion? I think it would be fair to be here arguing it was an abuse of discretion. Okay, so now what we're doing is we're looking at the continuum. Correct. Would you agree? And what you're saying is that in that continuum, this is much more than just a single violation, this is a pattern, and what you're indicating is that this is an individual whose conduct the trial court adequately examined and knowledgeably sentenced to DJJ. Yes, I would. And I would like to point out that the mother herself, if you read the transcript, she was candid and she appeared to be somewhat torn in the sense that at the original time when the court allowed him probation following the original commitment, she had apparently expressed because the trial court included in sentencing that her own concerns of whether she was able to provide a safe home for him. You have a mother herself saying, I don't know if I can keep my son safe, regardless of her age and the age of the older brothers. She's expressing her concern and yet she agreed, you know, he could come back home, he could live with these conditions that the court put on. He showed that he could not do that and I want to get, I want to make this point that whenever a youth is sentenced to the Department of Juvenile Justice, the automatic argument by the counsel representing that youth is this is punishment. There's no other reason, there is no other possible benefits to sending him there. It's strictly a punishment. And I want to make clear that's not the case. If you look at the goals of the Act, there are several and several of them were set out in Mr. Ryan's original brief. And those include that the overarching purpose of the Act is to secure for every child the care and the guidance necessary to serve the safety, the moral, emotional, mental, physical welfare of the child. The Act says it's every child's right to services necessary for his safety and proper development, including health, education, social services. Another goal is to develop delinquent minors into productive adults. The evidence here says that when he was sent and he was committed to juvenile justice, he was getting that. The goal of the Act was being fulfilled. The mandate of the state to provide him care and safety. He wasn't acting out. He was attending as he was supposed to. He got the services that the Act so desperately tried to put in place for him. What about Mr. Ryan's argument that something short of a DJJ commitment would satisfy those interests, for example, placement under 740 or electronic home detention? There is no indication here that placement under 740 was available, although the trial court did not go in great articulation as to what they had looked at. His belief was, and based on the evidence that he apparently had, that was not an option. But don't they have the pavilion in Champaign where they take children who've gotten into trouble and they provide therapeutic services to them while they're housed there in a locked facility? They do and there are other facilities like Catholic Charities and there were several other programs that the trial court went through that he had already received those services and none of them had been successful. The trial court specifically articulated those services and the fact that they were unsuccessful at the original sentencing and when he was resentencing, he went back and he said, I laid this out in detail and I adopt the findings that I found then here too. So there is evidence in the record that they had tried, beyond probation at home with mom and those services, but they had tried other community services for this minor and they were all unsuccessful. I think the first point though is I want to address a comment that was made. I vehemently disagree with the suggestion that once the trial court sentenced Marcus to commitment of juvenile justice and then when Marcus showed improvement and he allowed him probation, I completely disagree with the suggestion that once probation was determined to be a possible appropriate sentence for this original offense, that somehow it wipes away any possible further finding that at a later time commitment might again be appropriate. You cannot read 720, which allows for commitment at any time when there's a violation of probation if it was originally allowed, and not read 750 as I've already talked about and those limitations that you have to find. But you can't read 750 and not 710. He was being sentenced for the offense of possession with intent to deliver. And the trial court's opportunity to prove that he would be successful at a community-based sentence did not foreclose the future option if he violated to return him to the Department of Juvenile Justice. And that is exactly what the statute plainly says. There is simply no statutory support for the argument that returning him to the Department of Juvenile Justice was not available as a matter of law. It was. I also disagree with the suggestion that it was an abuse of discretion to do so. As I believe it was Justice Harris pointed out, he did have police contacts for criminal activity. And no, the state did not file new charges. But there again, this could be looked at in two ways. In the reply brief, counsel suggests that they didn't file new charges because there probably wasn't evidence to support them. I counter that this was a 14-year-old youth who was already in juvenile proceedings and those things could be handled and considered in the proceedings that were already happening. They had the right to look at that and it was criminal activity. And again, in resentencing, the trial court referenced back to the original sentencing hearing. And in the original sentencing hearing, the trial court had laid out that there had been 13 additional police contacts. They're far more than running away. Battery, criminal sexual assault, criminal damage to property, aggravated battery, burglary of a motor vehicle, trespass, theft. There was testimony that he was robbing elementary age students of their Sony PlayStation games. He was bullying. He was involved or suggesting gang activity, asking this elementary student if he was willing to fight in a gang to get back his PlayStation, his portable PlayStation. This was all happening at or on school grounds. He admitted at 14, daily cannabis use. What short of recommitment did the trial court have to serve the goals of the act? How is a 14-year-old running away on the streets, daily using cannabis, getting his, quote, rights to services necessary for his safety and proper development? He can't. But if we put him back, as the trial court did, in juvenile justice, he gets those things. He has no choice but to get those things. And the influences that were causing problems, such as friends, environment, are removed. I'm not saying it's ideal. I'm not ignorant of all of the research that suggests there's damage that can happen by putting children in juvenile justice because they are coming in contact with others. But he was coming in contact. He was seeking them out when he was out on his own. And the evidence we have is that in juvenile justice, he was not getting in grouping with these other youth that may cause more problem. He was following the rules. He was doing well. That was the basis for the original chance at probation. Do you believe that the record of the sentencing hearing adequately indicates that the trial court gave adequate consideration to some of the very sad factors involved here? His upbringing, the deaths of his brother and sister and his father within a span of two years. I mean, this isn't a child that comes from a family of means or even a family, you know, within the traditional sense. So very tough background here. Did the trial court adequately consider those factors? The trial court did. And the trial court specifically stated that it did, that it recognized the difficulties that he had. But at the same time, it must be countered with the right of every child to go to school free from being pressured into, or not pressured, but presented with the option to buy drugs. But the trial court, again, specifically articulated the difficulties and at the re-sentencing acknowledged the recent passing of the brother, who apparently was the brother that Marcus was closer to, than the other brother that the mom appeared to maybe call on occasion for support if she felt she needed help in dealing with whatever issues she had with Marcus. I believe that the trial court's order of commitment was not contrary to the Act. I believe it was in accordance with the Act and I believe that this is the chance for Marcus to get the services that, according to the state statutes, he has a right to receive. I understand that counsel takes issue with the value of some of the police contacts, probably both those that occurred and were referenced in the original sentencing hearing, and then the theft and the criminal damage to property that occurred while he was out on probation following the original commitment. But the statute clearly provides for those to be considered and the statute by language recognizes that there is a limit on the probative value of them. But it doesn't change the fact that there is a value to them. And it's a pattern that was consistent from his original 13 police contacts to originally being picked up for throwing pumpkins and breaking into cars on a night with apparently his biological brother. Those charges were dismissed as part of the plea deal when he pled guilty to this possession with intent. Then he gets another chance at probation. We have this continuing theft, damage, criminal damage to property. It's a pattern that the court could not be asked to ignore. This was not running away. It was not simply running away. And the court would ask this court to affirm the trial court's finding and commitment. Thank you, Mr. Johnson. Are there any questions? Thank you. Mr. Ryan? Thank you. I take issue with a number of counsel's statements, beginning with the idea that the conduct of someone who is on probation is irrelevant to the sentence. As I quoted in my reply brief, and there's a People v. Rathbone, which is an adult case. When resentencing after revocation of probation, trial courts are entitled to consider conduct on probation. I think the state makes a huge leap from saying this child is running away and make no mistake, the only conduct proven is the running away. It's the only thing in the revocation thing. The curfew violations, there might be side things to this, but again, these are exactly the kinds of things that don't scream out for prison. These are child offenses, child infractions. The idea that the state is saying is that prison is good for minors flies in the face of all of the research, flies in the face of our Supreme Court statement in Miller that numerous studies post-Graham indicate that exposure to deviant peers leads to increased deviant behavior and is a consistent predictor of adolescent delinquency. You take a minor who runs away who might be threatened for his own personal safety by what unsavory characters he meets, and then you put him with the most violent minors who are threats to the public, and you make sure that he runs into those people. Also, I take issue with the state's argument that somehow Section 740 placement goes away if you just say, oh, well, I'm not aware that that was available. The statute makes that a condition of 750, and this is also a flaw with the state's overall argument. They want to say that it satisfies 750, but they never look at the language of it. How is it in the best interest of Marcus to go to prison rather than residential placement, 740, which is right there in 750? How is violating his curfew and running away from his mom, and by the way, the dates were he was set free July 5th and the first alleged incident occurred July 24th, so 19 days is the exact time frame. And then there are these services that are supposedly being provided which are not in the record. And I have no doubt that DOC does try to do, IDJ, excuse me, tries to do some things, but the fact is, even now, the Illinois legislature is saying that prison is supposed to be a last resort, and I don't see, again, when counsel refers to police contacts, the vast majority, all but two of which occurred prior to the court's order of probation in this context of running away and being out past a curfew transforms what had been probationable not a threat to the public, because to set him free, to not give prison, you're implicitly agreeing with 750 that this is not a threat to the public. How does running away without further evidence of criminal activity transform that into a threat? I would say the same thing for a curfew violation. Also it's not just that the state didn't have new charges, and he was not picked up for probation. How does the fact that there are no new charges mean that it didn't happen? All there is is a paucity of information, and again, I point out, the state makes reference to some of Marcus's conduct that was presented by the state at the original disposition hearing. The state clearly is able to present evidence of other things, and the court knew all this, and then subsequently gave him probation. The state, if it had any credible evidence that Marcus was involved in a theft or criminal damage to property, if not making it another basis, perhaps an easier grounds to prove revocation, could have presented actual facts instead of relying on context. Also I take, again, as I stated in my reply, I take strong issue with the inference the council seems to be making on police contacts alone, that at the age of 12, a police contact for criminal sexual assault implies that Marcus committed this, even though the case was administratively there's a statement in the record to the school counselor from Marcus's mom to the effect that his mom told the counselor that there was some sexual abuse, but Marcus didn't want to talk about it. To me, that actually implies that he's the victim, because usually if you're the perpetrator, you're not allowed to just not talk about it. There's things that are going to be done to deal with you when you're 12 years old and you're committing sex offenses. To be allowed no counseling, no nothing, implies that he's a victim. The idea now that conduct from a police report of conduct that we should assume that he's a victim, is simply not warranted by anything in the law or logic. Are there any questions? Thank you, Mr. Ryan. The court will be in recess until our next case is ready to go.